UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MOODY NATIONAL REALTY § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 4:07-cv-3239 |
| § | |
| OZARK MANAGEMENT, INC., § | |
| § | |
| Defendant. § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant's Motion to Dismiss on the Basis of Personal Jurisdiction and Failure to State a Claim, Doc. No. 2. The Court finds that it may not exercise specific jurisdiction over Defendant based on Defendant's contacts with Texas arising out of Plaintiff's contract claim. In order for the Court to determine whether it may exercise specific jurisdiction based on contacts arising out of Plaintiff's intentional tort claim, however, the Court requires Plaintiff to restate its fraud claim with particularity, in accordance with Federal Rule of Civil Procedure 9(b). Plaintiff shall have until Friday, April 25, 2008 to file an Amended Complaint.

### I.    BACKGROUND

Plaintiff filed suit in the 164th District Court of Harris County, Texas, and Defendant subsequently removed the lawsuit to this Court pursuant to 28 U.S.C. § 1441(a) and 28 U.S.C. § 1332. Upon removal, Defendant filed this Motion to Dismiss. The Court granted Plaintiff's unopposed request for a continuance in order to engage in limited jurisdictional discovery.

Plaintiff is a Texas commercial real-estate firm with its principal place of business in Harris County, Texas. Defendant is a Missouri corporation in the business of leasing aircraft to

corporate clients. Defendant is organized and existing under the laws of the State of Missouri with a principal office in Jefferson City, Missouri.

In July 2007, Plaintiff contacted JetLease, a Florida aircraft broker, expressing interest in leasing a Falcon 50-3D aircraft. JetLease then engaged in a series of email communications with Defendant, the owner of the aircraft, about the lease. Ozark provided specifications and photographs of the aircraft to JetLease, discussed the lease amount and brokerage fee, and asked JetLease to include certain provisions in the lease. (Def.'s Mot. Dismiss, Stricker Aff. ¶¶4-5; Def.'s Reply Ex. 1.) The lease was for 30 days with an option to renew. JetLease then provided the lease to Plaintiff. Plaintiff signed the lease in Texas on or around July 15, 2007 and mailed it to Defendant in Missouri. Defendant then signed the contract in Missouri. Plaintiff also wired to Defendant a $120,000 security deposit and $121,000 for the first month's rent. Plaintiff then traveled to Columbia, Missouri to pick up the aircraft. (Def's Mot. Dismiss, Stricker Aff. ¶ 8.)

Shortly after entering into the lease, Plaintiff's pilots discovered a series of mechanical and electrical problems with the aircraft. Among other things, Plaintiffs allege that an altitude indicator malfunctioned, the entire instrument panel failed requiring an emergency landing, and a substantial hydraulic fluid leak was discovered. Plaintiff's pilots were advised that the aircraft was unsafe to fly. According to Defendant, Plaintiff then abandoned the aircraft in Colorado.

Plaintiff claims that it is entitled to compensation for the costs it incurred while awaiting replacement parts for the aircraft, in obtaining another private aircraft, and in purchasing multiple commercial airline flights for several Moody employees during the remainder of the 30-day lease. Plaintiff has demanded repayment of its $121,000 security deposit and one-half of the first month's rent ($60,500), but Defendant has only refunded $63,000. Plaintiff clarifies in its

Supplemental Response brief that it also seeks rescission of the Lease Agreement and return of the consideration paid by Plaintiff. (Pl.'s Supp. Resp. Brief 14.)

Plaintiff alleges that Defendant breached the contract by failing to provide a safe and fully operational aircraft, by failing to repair or provide a replacement aircraft, and by refusing to refund Plaintiff's security deposit. Plaintiff further argues that Defendant knowingly or negligently made material misrepresentations regarding the condition of the aircraft and intended that Plaintiff rely on these representations when entering the lease. Plaintiff alleges damages exceeding $250,000.

## II. PERSONAL JURISDICTION

Defendant argues that this Court may not exercise jurisdiction over it because Plaintiff has not shown that Defendant has minimum contacts with Texas. Plaintiff, on the other hand, argues that the Court may exercise specific jurisdiction over Defendant.[1] The Court agrees with Defendant, and finds that the exercise of specific jurisdiction is not proper in this case.

### A. Standard

In a diversity case,[2] the Court may exercise personal jurisdiction over a nonresident defendant if the forum state's long-arm statute creates personal jurisdiction over the defendant and if the exercise of that jurisdiction "is consistent with the due process guarantees of the United States Constitution." *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). Because the Texas Long Arm Statute is coextensive with the limitations of due process, questions of personal jurisdiction in Texas are generally analyzed entirely within the framework of constitutional due

---

[1] In its initial response, Plaintiff appeared hopeful that jurisdictional discovery might reveal sufficient contacts to justify the exercise of general jurisdiction. Plaintiff does not argue that general jurisdiction is proper in its supplemental response to Defendant's Motion, however. Plaintiff complains that Defendant did not respond to all requests for discovery, but has not moved the Court to compel additional production or responses.

[2] There is no dispute that parties are completely diverse and that that the matter in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a).

3

process. *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003). The Due Process Clause of the Fourteenth Amendment permits a court to exercise personal jurisdiction over a nonresident defendant when "(1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The minimum contacts requirement can be met through contacts sufficient to confer either specific or general jurisdiction. *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003). When the plaintiff demonstrates that a nonresident has "purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities," the defendant's contacts are sufficient to support specific jurisdiction.[3] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *see also Revell*, 317 F.3d at 470.

"When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Jobe v. ATR Marketing, Inc.*, 87 F.3d 751, 753 (5th Cir. 1996). If a plaintiff establishes minimum contacts between the defendant and the forum state, then the defendant has the burden of proving that the assertion of jurisdiction is unfair and unreasonable. *Cent. Freight*, 322 F.3d at 384. Because the Court is ruling on this motion without holding an evidentiary hearing, it must

---

[3] Because the question of personal jurisdiction is one of federal due process, the Court is not bound to follow a Texas court's decision on personal jurisdiction, even in a diversity case. *See, e.g., Grantham v. Avondale Industries*, 964 F.2d 471, 473 (5th Cir. 1992) ("[T]he federal district court takes as its authority on federal constitutional issues decisions of the United States courts of appeals and the United States Supreme Court, rather than those of the state supreme court."); *Hopper v. Mayeaux*, 545 F. Supp. 1174, 1177 (S.D. Tex. 1982).

4

accept as true the uncontroverted allegations in the complaint and resolve in favor of plaintiff any factual conflicts posed by the affidavits. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (adding that "in a no-hearing situation, a plaintiff satisfies his burden by presenting a prima facie case for personal jurisdiction."); *see also Cent. Freight*, 322 F.3d at 380 (noting that the Court need not accept conclusory allegations as true when conducting the jurisdictional analysis).

### B.    Analysis

Plaintiff argues, first, that Defendant has established minimum contacts with Texas by contracting with Plaintiff.[4] Plaintiff observes that Defendant knew it was contracting with a Texas resident and that both intended pilots of the aircraft were Texas residents employed by a Texas corporation. It is well established in this circuit, however, that a nonresident's contract with a forum state Plaintiff, standing alone, does not establish sufficient minimum contacts. *See, e.g., Moncrief Oil Intern. Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007); *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 344 (5th Cir. 2004). Thus, the fact that Defendant entered into a contract with a forum state resident by itself cannot support the exercise of personal jurisdiction. Instead, the Court must evaluate the totality of "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" in determining whether the defendant has purposefully availed itself of the privilege of conducting business in the forum state. *Burger King*, 471 U.S. at 479; *see also Stuart v. Spademan*, 772 F.2d 1185, 1193 (5th Cir. 1985). In cases involving interstate

---

[4] The Court pauses to note the various contacts that Defendant does *not* have with Texas. There is no evidence that Defendant has any offices or shareholders in Texas, advertises in Texas, pays taxes in Texas, or owns any property in Texas. Indeed, it is undisputed that Defendant's sole shareholder, officer, and manager has never been to Texas on business for Ozark. Furthermore, Defendant maintains, and Plaintiff does not dispute, that it has not leased any other aircraft to any company in Texas. Defendant claims that the total business dealings it has had with any person or entity in Texas for the five years prior to the filing of the complaint would be less than $10,000, primarily for the purchase of spare parts, which were not used for the aircraft at issue in this case.

5

contractual obligations, parties who "'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 473 (citing *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 647 (1950)).

Defendant had very little contact with the state of Texas during the negotiation of the contract at issue in this case. The record shows that Plaintiff approached JetLease, a Florida company, and discussed the possibility of leasing the aircraft. JetLease then communicated with Defendant in Missouri, possibly confirmed the availability of the aircraft with Plaintiff in Texas, and then sent the contract to Plaintiff in Texas. There is no evidence in the record of any further negotiations. Thus, even if JetLease's communications may be attributed to Defendant due to an agency relationship, Defendant had very limited contact with Texas through the negotiation of this contract.[5]

Parties anticipated that the contract would have some consequences in Texas, though performance was not to be entirely in Texas. Plaintiff executed the contract by signing the Lease in Texas and wired money to Defendant from a Texas bank account, but Defendant's performance was centered primarily in Missouri, where it delivered the aircraft to Plaintiff. Plaintiff clearly intended to and did use the leased aircraft in a number of states, including Texas. The contract also specified that the aircraft would be hangared in Houston, Texas when not in use. Plaintiff argues that Defendants also engaged in phone and email communications with Plaintiff after the mechanical and technical difficulties arose. Defendant points out, however, that it is not all clear that Plaintiff was in the state of Texas when those phone calls were made.

---

[5] Plaintiff also notes that Defendant may have had telephonic communications with other Texas residents. There is no evidence that these communications were related to the transaction at issue in this lawsuit, however.

6

Considering these facts in toto, it appears that Defendant did anticipate that the contract would have at least some consequences in Texas.

Other terms of the contract weigh against the exercise of specific jurisdiction in this case. The contract includes a choice-of-law provision stating that the Agreement "shall be construed and performance shall be governed under the Laws of the State of Missouri . . . ." (Aircraft Lease Agreement Art. XIX.) Although a choice-of-law provision is only one factor to be considered in the specific jurisdiction analysis, this is not a case where "the multitude of contacts" between the parties "substantially outweighs the choice-of-law factor. *Electrosource, Inc. v. Horizon Battery Technologies, Ltd.*, 176 F.3d 867, 873 (5th Cir. 1999); *see also Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026, 1029 (5th Cir. 1983) ("[W]e do consider significant that only a single transaction is involved in this case, governed by [the nonforum state's] law, which is the defendant's sole contact with the forum state."). The same provision stipulates that Jefferson City, Missouri is "the designated place of formation of this agreement." (*Id.*) The contract also includes a permissive jurisdiction and venue selection clause that provides: "The parties hereby stipulate to the jurisdiction and venue of the United States District Court for the Western District of Missouri as an appropriate forum for the resolution of any disputes arising under or related to this Agreement." (*Id.*) Finally, the contract states that the risk of loss was to be upon Plaintiff on the date of delivery and acceptance of the aircraft, which took place in Missouri.

Considered in their totality, the prior negotiations, anticipated consequences, contract terms, and actual course of dealing related to this contract do not support the exercise of specific jurisdiction. Defendants had very few communications with Plaintiff in Texas prior to the contract's formation. The fact that the aircraft was to be hangared in Texas seems somewhat

7

analogous to the isolated shipment of goods by a defendant into the forum state. As the Fifth Circuit has explained, "[t]he random use of interstate commerce to negotiate and close a particular contract, the isolated shipment of goods to the forum at the instigation of the resident plaintiffs, and the mailing of payments to the forum do not constitute the minimum contacts necessary to constitutionally exercise jurisdiction over [a nonresident Defendant]." *Stuart v. Spademan*, 772 F.2d 1185, 1194 (5th Cir. 1985). The communications regarding the mechanical and electrical problems of the aircraft do not alter this conclusion. *See Freudensprung*, 379 F.3d at 344 (noting that the Fifth Circuit "has repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant."). Defendant performed in Missouri, not Texas. Finally, the contract included a Missouri choice-of-law and venue selection clause.

The Court is not aware of Fifth Circuit precedent that would compel a different conclusion. In at least one case, the Fifth Circuit has held that "a nonresident can establish contact with the forum by taking purposeful and affirmative action, the effect of which is to cause business activity (foreseeable by the defendant) in the forum state." *Cent. Freight*, 322 F.3d at 382. Declaring that "[m]ere foreseeability, standing alone, does not create jurisdiction," however, the Circuit subsequently clarified and distinguished *Central Freight* in ways that are relevant to this case. *Moncrief*, 481 F.3d at 313. Unlike *Central Freight*, for example, in the instant lawsuit, Plaintiff's location in Texas was not "strategically advantageous to the defendant" or "the basis for the agreement." *Id.* (distinguishing *Cent. Freight*, 322 F.3d at 382).

8

Nor was Texas "clearly the hub" of the parties' activities. *Id.* (noting that the Fifth Circuit's finding of jurisdiction based on the parties' contractual relationship in *Central Freight* "was supported not only by foreseeability, but also by the fact that the forum state was 'clearly the hub of the parties' activities.'" (citing *Cent. Freight*, 681 F.2d at 1008-09)). Furthermore, Defendant did not "actively engage" in the activities taking place within Texas. *Id.* Finally, Defendant appears to have little if any other contact with Texas outside of the "single, isolated transaction involved in this case." *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026 (5th Cir. 1983) (upholding district court's finding that Defendant did not purposefully avail itself of the privilege of conducting business within Texas). The Court finds, therefore, that it may not exercise specific jurisdiction over Defendant based on its contractual relationship with Plaintiff.

Although it does not appear that jurisdiction would be proper based on the parties' contractual relationship alone, Plaintiff also argues that specific jurisdiction is justified because Defendant allegedly committed the intentional tort of fraud or fraudulent inducement. The only evidence before the Court regarding Defendant's alleged fraud claim is that Defendant represented in the Lease Agreement itself that the aircraft would be "fit for use and . . . in good, safe and serviceable and airworthy condition."[6] (Aircraft Lease Art. V.) Plaintiff alleges that Defendant misrepresented to Plaintiff that the aircraft was in safe working condition despite the fact that Defendant "was aware of the malfunctioning instrument panel when it purchased the aircraft from the previous owner," and that Defendant intended that Plaintiff rely on this misrepresentation when entering into the lease. (Petition 4-5.) Although it is possible that

---

[6] The full text of the first sentence of Article V of the aircraft lease provides: "Acceptance of delivery of the Aircraft or the execution of the Acceptance Certificate by Lessee in the time and manner herein provided acknowledges by Lessee that said Aircraft is fit for use and is in good, safe and serviceable and airworthy condition." (Aircraft Lease Art. V.) It is undisputed that Plaintiff executed the Acceptance Certificate after inspecting the aircraft

9

Plaintiff believes that misrepresentations were made through other communications, there is absolutely no factual evidence in the record regarding any other such communications.

"A single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." *Lewis v. Fresne*, 252 F.3d 352 (5th Cir. 2001) (upholding the exercise of specific jurisdiction based on misrepresentations allegedly made in a phone conversation between the parties and loan documents and stock certificates containing alleged fraudulent misstatements); *see also Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) ("When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment."). A Plaintiff must show not only that the alleged act had an effect in the forum state, but also that the Defendant purposefully directed a specific tortious act toward the forum state. *See Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869-70 (5th Cir. 2001).

It appears that sending a contract containing a misrepresentation into Texas can support the exercise of specific jurisdiction where that misrepresentation gives rise to the intentional tort of fraud or fraudulent inducement.[7] Defendant argues, however, that Plaintiff has failed even to state a claim for fraud, based on the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). The Federal Rules of Civil Procedure "apply to civil actions removed to the United States district courts from the state

---

[7] The Texas Supreme Court has refused to find jurisdiction based on a "directed-a-tort" theory, noting, among other things, that jurisdiction should not turn on whether a Plaintiff sued in tort or contract. *See generally Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777 (Tex. 2005). The Court finds some of the Texas Supreme Court reasoning persuasive, but, as explained above, the Court is bound by the law of the Fifth Circuit with respect to personal jurisdiction. *See also Staton Holdings, Inc. v. Hilton Apparel Group*, 2007 WL 1964635, at *4 (N.D. Tex. July 05, 2007) ("To the extent *Holten* attempts to rewrite more than 25 years of Fifth Circuit jurisprudence, which holds that a single communication by a nonresident defendant aimed at the forum state is enough to satisfy the purposeful availment requirement of the due process minimum contacts inquiry where the content of the communication gives rise to a claim of fraud, the court declines to follow *Holten*.").

courts and govern procedure after removal." FED. R. CIV. P. 81 (c). "Repleading is not necessary unless the court so orders." *Id.* A challenge under Federal Rule 9(b) is generally considered a motion to dismiss for failure to state a claim, and may therefore be brought at any time in the litigation.

Even if Plaintiff has provided some evidence regarding certain aspects of the "who, when, and where, etc." of the alleged fraud, *see, e.g., U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997), the critical allegation that Defendant was actually aware of the malfunctioning instrument is alleged only "on information and belief." Although fraud may be pled on information and belief if the facts relating to the alleged fraud are "peculiarly within the perpetrator's knowledge," the Fifth Circuit has warned that "this exception 'must not be mistaken for license to base claims of fraud on speculation and conclusory allegations.'" *Thompson*, 125 F.3d at 903 (citing *Tuchman v. DSC Communications, Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)). Furthermore, "even where allegations are based on information and belief, the complaint must set forth a factual basis for such belief." *Id.*

Where the exercise of specific jurisdiction turns entirely on an allegation that Defendant has committed the intentional tort of fraud, the Court believes that it is incumbent upon Plaintiff to state its fraud claim with particularity. The Court is not to determine the merits of a suit on a jurisdictional inquiry. However, it does seem reasonable to require a Plaintiff at least to meet minimum pleading requirements when specific jurisdiction will be based solely on a claim of fraud and where the very same contact supporting jurisdiction under a tort theory would not support jurisdiction under a contract theory.

The Court will grant Plaintiff's request to re-plead its fraud claims. Plaintiff will have until Friday, April 25, 2008 to file an amended complaint. The Court will then determine

whether it may exercise specific jurisdiction over Defendant. If the Court finds that the exercise of specific jurisdiction is appropriate, it will then address Defendant's arguments that Plaintiff's complaint must be dismissed for failure to state a claim based on the Lease Agreement's indemnification clause.

### III. CONCLUSION

Plaintiff will have until Friday, April 25, 2008 to submit an Amended Complaint pleading its fraud claim with particularity as required by Federal Rule of Civil Procedure 9(b).

**IT IS SO ORDERED.**

**SIGNED** this 22nd day of April, 2008.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL
FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY
EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT